**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANDREW M.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-906

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Andrew M. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

In August 2017, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on September 14, 2015. In his application, Plaintiff alleged disability based upon a degenerative back condition, mild scoliosis, cluster headaches and epididymitis. (Tr. 202). After his application was denied initially and on reconsideration, Plaintiff requested an evidentiary hearing. On September 26, 2019,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

Plaintiff appeared, with counsel, and testified before Administrative Law Judge ("ALJ") Thuy-Anh Nguyen. A vocational expert also testified. (Tr. 33-76). On February 12, 2020, the ALJ issued a partially adverse and partially favorable decision.

Plaintiff has a high school education and was "closely approaching advanced age" on his alleged disability onset date. He progressed to "an individual of advanced age" in November 2019. (*See* Tr. 24). In the decision, the ALJ determined that Plaintiff has the following severe impairments: disorders of the spine including scoliosis, Scheuermann's, and degenerative disc disease; osteoarthritis of the right hand; migraines; and hearing loss. (Tr. 19). Plaintiff does not dispute the ALJ's determination that none of his impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

After considering the record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, defined as able to lift/carry up to twenty pounds occasionally and ten pounds frequently. (Tr. 20). However, she added the following non-exertional limitations:

> [T]he claimant can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid all hazards of unprotected heights, operating dangerous machinery, and commercial driving. He must avoid prolonged exposure to loud background noise, with loud defined by the Selected Characteristics of Occupations (SCO). He can frequently handle and finger with the right upper extremity.

(Tr. 20).

There is no dispute that Plaintiff can no longer perform his past work making and installing wood cabinets. However, considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant number" of jobs in the national economy, including the

representative jobs of store cashier, sales attendant, and routing clerk, through the date when his age category changed to "advanced age" in November 2019. (Tr. 25). Therefore, the ALJ determined that Plaintiff was not under a disability through that date. By contrast, beginning on his 55th birthday in 2019, when Plaintiff's age category changed to "advanced age," the ALJ determined that Medical-Vocational Grid Rule 202.06 required a presumptive finding of "disabled." (*Id.*) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff disputes the ALJ's determination that he was "not disabled" for the four-year period between his alleged onset of disability on September 14, 2015 and November 2019. If the ALJ had restricted him to sedentary work for that period, he would have benefitted from a different Medical-Vocational Grid Rule that would have presumed disability for the additional period. Plaintiff first argues that the ALJ erred by relying upon "an unreasonably selective consideration of the record and/or …a mischaracterization of the record." (Doc. 10 at 18). Second, Plaintiff contends that the ALJ failed to comply with new regulations regarding the evaluation of medical opinions. Plaintiff's second claim is persuasive. Because the ALJ's decision does not sufficiently articulate the basis for discounting the opinions of Plaintiff's physicians or for accepting the prior medical findings of agency physicians, this case should be reversed and remanded for further review.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent

3

the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

4

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. The ALJ's Evaluation of the Medical Findings and Opinion Evidence[3]**

The ALJ found the medical findings and opinions of two agency physicians, both of whom opined that Plaintiff was capable of work at the light exertional level, to be more "persuasive" and more "consistent with the medical evidence of record" than the opinions of Plaintiff's two treating physicians. (Tr. 23). Plaintiff argues that the ALJ committed both procedural and substantive errors in doing so. The Court finds Plaintiff's procedural claim of error to be persuasive, and therefore remands for further review.

Because Plaintiff filed his application after March 27, 2017, recently revised regulations apply. *See generally*, 20 C.F.R. § 404.1520c. The new regulations eliminate what was formerly known as the "treating source rule"; the ALJ in her opinion referenced the new standard when she stated "we will not defer or give any specific evidentiary

---

[3]While presented as Plaintiff's second claim in his brief, this dispositive claim is addressed first for the convenience of the Court.

5

weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources." (Tr. 23). Rather than assigning a particular "weight" to each opinion under a previously defined hierarchy of medical opinions, the regulations now require the ALJ to determine the "persuasiveness" of each prior administrative medical finding or other medical opinion based upon a list of factors, the most important of which are "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2). Supportability now focuses on the provider's explanations for his or her opinions, and includes whether the opinions are supported by relevant objective medical evidence (such as lab results or imaging studies) or other supporting explanations. *See* 20 C.F.R. § 416.920c(c)(1). The consistency factor is defined as the extent to which an opinion or finding is consistent with evidence from other medical or nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

Prior to March 27, 2017, an ALJ was required to articulate "good reasons" if he or she gave less-than-controlling weight to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) (2016). The prior regulation specified that an ALJ would "consider" a list of factors in assessing what weight should be given to such an opinion, but contained no articulation requirement for any *specific* factor. By contrast, the revised regulations eliminate the treating physician rule but simultaneously expand the articulation requirements to all consulting, treating, or reviewing sources who offer medical findings or opinions. *See* 20 C.F.R. § 404.1520c. Thus, for claims filed after March 27, 2017, the ALJ must *explicitly* discuss how the two "most important" factors of supportability and consistency have been considered in determining the persuasiveness of *each* medical source's opinion.

> The factors of supportability… and consistency… are the most important factors….Therefore, **we will explain how we considered the**

**supportability and consistency factors** for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [other listed] factors….

20 C.F.R. § 404.1520c(b)(2) (emphasis added).

Plaintiff complains that the ALJ's analysis of his treating physicians' opinions was overly cursory and provided no explanation of the critical factors of supportability and consistency. Although the case law is still developing, the Court agrees that the ALJ's analysis in this case failed to comply with the unambiguous new articulation requirement.

Plaintiff treated with Dr. Wunder from August 2016 until May 2018, when Dr. Wunder referred Plaintiff to Dr. Danko for pain management. (Tr. 974-975). Dr. Wunder noted that Plaintiff's x-rays showed "a fairly significant 15º dextroscoliosis with some associated kypholic appearance," and that MRIs showed "multilevel degeneration," with "some wedging and kyphosis from T9 t T12 and mild scoliosis," "some tiny disc protrusions at T4-5, T8-9 and T9-10 …[with] more diffuse building and degeneration at T10-11 and T11-12," as well as "left sided L3-4 and L4-5 protrusions." (Tr. 798). Describing Plaintiff's pain as "severe and debilitating," he opined that Plaintiff would be limited to less than sedentary work,[4] with sitting limited to 3 hours per day and standing/walking limited to 1 hour. (Tr. 974-975).

After a brief summary of Dr. Wunder's opinions, the ALJ stated:

This opinion is somewhat persuasive, in that the record does demonstrate that the claimant is limited by his physical impairments; however, the record also shows that the claimant is not as limited as alleged. For example, Dr. Wunder's own notes have indicate that the objective findings in the claimant's history are somewhat mild (10F/6, 8 *for example*). Moreover, he typically had a negative straight leg raise and normal gait (16F, 20F, *for example*).

---

[4]As stated, a limitation to sedentary work would have entitled Plaintiff to the application of a Grid Rule that presumes disability based upon Plaintiff's age.

7

(Tr. 23, citing Tr. 798, 800).[5]

Dr. Danko completed two nearly identical physician statements in May 2019. (Tr. 917-920). He stated that the following objective findings supported Plaintiff's subjective complaints of severe back pain: "Patient has had injections, spinal cord stimulator, and pain pump." (Tr. 917; Tr. 919). Dr. Danko opined that Plaintiff was capable of the light exertional level, but included additional work-preclusive limitations based upon Plaintiff's pain level. After summarizing Dr. Danko's opinions, the ALJ stated:

> The undersigned only finds this opinion somewhat persuasive as it is not entirely consistent with the record. For example, Dr. Danko's own treatment notes stated that the treatment enables the claimant's functional activities of daily living (16F/8 [Tr. 853] *for example*). However, this opinion is consistent in that the claimant does have some limitations due to his impairments, which are accommodated for in the above RFC.

(Tr. 23).

The ALJ's analysis of the medical findings of the non-examining agency consultants, whose opinions she largely adopted, was even more succinct:

> Both Dr. Prosperi and Dr. Amiri limited the claimant to range of light work (1A; 3A). The undersigned finds these opinions persuasive as they are consistent with the medical evidence of record; however, the undersigned has defined "loud background noise" in the above RFC for clarity.

(Tr. 23).

As is evident from the above quotations, the ALJ made no express reference to the distinct factor of "supportability" in her assessment of *any* of the four opinions, despite

---

[5] Dr. Wunder called Plaintiff's pain symptoms "severe and debilitating" in the same record. (Tr. 798). Although Dr. Wunder stated that he did not "see anything on his MRI that would support the need for surgery," he did not describe the MRI evidence as mild. In a later January 2018 record, Dr. Wunder referenced additional CT scans of both thoracic and lumbar areas as showing "only mild abnormalities" in the lumbar region, but with "significant" and "moderate to severe" disease in the thoracic region. (*Id.*) Therefore, the ALJ's characterization of Dr. Wunder's notes reflecting "somewhat mild" objective findings is arguably misleading. In addition, Exhibits 16F and 20F are records from Dr. Danko, not Dr. Wunder, and do not appear to include straight leg raise tests.

8

the mandatory new articulation requirement contained in 20 C.F.R. §404.1520c(b)(2). The undersigned recognizes that some courts have suggested that a failure to expound upon "supportability" may be excused when a medical source's opinion is provided on a check-box form, as both treating physicians' opinions were in this case. *See*, *e.g.*, *Harris v. Com'r of Soc. Sec.*, 2021 WL 3615721, at *7 (S.D. Ohio, Aug. 16, 2021) (collecting cases that suggest a lack of supportability is self-evident when opinions are rendered on check-box forms); *Paradinovich v. Com'r of Soc. Sec.*, 2021 WL 5994043, at *8 (N.D. Ohio Sept. 28, 2021) (declining to reverse even though ALJ failed to articulate "supportability," noting that "[c]ourts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion."). However, much of the relevant case law concerning check-box forms predates the new articulation standard that requires explicit discussion of supportability. For that reason, the undersigned declines to embrace a blanket rule that use of a "check box" form renders harmless an ALJ's failure to discuss supportability.[6]

In addition to failing to discuss the distinct factor of supportability for any of the medical source statements, the ALJ did not fully explain how she considered the factor of "consistency" in evaluating Dr. Wunder's opinions. In addition, regarding the agency consultants' prior medical findings, her articulation of "consistency" was a single conclusory phrase that their findings were "consistent with the medical evidence." Last, despite suggesting that Dr. Danko's opinions were "not entirely consistent with the record," the ALJ did not articulate how Dr. Danko's opinions lacked consistency but for a

---

[6]Physicians frequently employ check-box forms. However, many of the forms contain either narrative sections or references to diagnoses, testing, or other supporting evidence that offer at least some support for the opinions expressed therein.

9

single reference to a staff note that stated that Plaintiff's treatment "enables functional activities of daily living." (Tr. 853). Of course, the ability to perform some functional activities of daily living cannot be equated to being able to engage in sustained full-time work activity. *See also*, *generally* 20 C.F.R. § 404.1527c(c)(2) (defining consistency factor); 20 C.F.R.404.1513(a) (defining medical and nonmedical source evidence).

The failure to use the defined terms "supportability" and "consistency" or to cite to the relevant regulation may or may not require remand in any particular case. However, given the unambiguous new requirements to discuss these "most important" factors, the ALJ's failure to reference either factor here invites closer scrutiny to determine whether she complied with the new requirements for each of the four source opinions provided in this case. As another court recently explained:

> The revised regulations for considering medical source opinions are clear: we *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(2) (emphasis added). This mandate sets out a "minimum level of articulation" such that "[an] ALJ's failure ... to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [claimant's] disability determination was supported by substantial evidence." *Warren I*, 2021 WL 860506, at \*8. The ALJ did not meet this standard, and therefore she erred in articulating her opinion. *See Scott S. v. Saul*, No. 2:20-CV-00236-JTR, 2021 WL 1894135, at \*6 (E.D. Wash. May 11, 2021) (reversing an ALJ's order where he "did not address the consistency between Dr. Smiley's opinion and other opinions in the file, and only discussed the supportability within the record"). Therefore, remand is necessary "unless it is harmless error."

*Vaughn v. Com'r of Soc. Sec.*, 2021 WL 3056108, at \*11 (W.D. Tenn. 2021) (quoting *Thaxton v. Com'r of Soc. Sec.*, 815 Fed. Appx. 955, 960 (6th Cir. 2020), additional citation omitted).

In the record presented, the Commissioner points to the ALJ's earlier analysis of various records and insists that is appropriate to consider the ALJ's opinion "as a whole,"

10

citing *Forrest v. Com'r of Soc.* Sec., 591 Fed. Appx. 359, 366 (6th Cir. 2014). Defendant suggests that the ALJ *might* have considered those same records when she determined that the treating physicians' opinions were only "somewhat" persuasive and (presumably) that they lacked consistency and supportability. However, in *Forrest*, the court was evaluating an ALJ's analysis at Step 3. In addition, the *Forrest* court alternatively concluded that any error was harmless because the plaintiff had failed to prove that his impairment met or equaled any Listing. By contrast, the issue here concerns the ALJ's compliance with clearly defined articulation requirements that closely relate to the RFC finding.

Considering the issues presented, the undersigned finds persuasive the reasoning of *Hardy v. Com'r of Soc. Sec.*, ___ F.Supp.3d ___, 2021 WL 3702170, at *5 (E.D. Mich. Aug. 13, 2021), in which the court reversed and remanded based upon a similar failure to comply with the new articulation requirement. As the *Hardy* court wrote:

> The regulations are clear and imperative in defining the mode of analysis. All medical sources are to be considered, and a rationale articulating how the ALJ applied the factors specified in the regulations must be stated for each source.

*Id.,* at *6; *accord Miles v. Com'r of Soc. Sec.*, 2021 WL 4905438, at *4 (S.D. Ohio Oct. 21, 2021) (remanding and holding that ALJ did not satisfy the mandate to discuss the supportability factor by virtue of her earlier recitation of Plaintiff's entire medical record and identification of instances where the medical records did not support a finding of disability).

In *Hardy*, a magistrate judge initially had accepted an argument by the Commissioner that the ALJ's decision could be affirmed on the basis of discussion of medical evidence throughout the opinion, notwithstanding the overly succinct analysis of the treating physicians' opinions. The presiding district judge disagreed:

11

> When the ALJ rejected the opinions of both physicians, she did not refer to [specific]… medical findings in the record. She did not explain why she chose to accept the findings that undercut the opinions and to reject the findings that supported them…. There was no discussion — no "articulation" — of the supportability and consistency factors.
>
> The magistrate judge described the ALJ's explanation as "brief" and "limited," but she believed that the ALJ complied with the regulations because of the preceding "extensive summarization of the record." However, where that summary included both supportive and contradictory information, it does little to explain the ALJ's reasoning or to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I.*, 2021 WL 860506, at *8.

*Hardy*, 2021 WL 3702170 at *5. The court concluded: "It is not the role of a reviewing court to comb the record and imagine manifold ways in which the factors [of consistency and supportability] could have been applied to the evidence that was presented." *Id*., at *6.

Based upon the record presented, the undersigned finds remand for further review and compliance with the new articulation standard for all four opinions to be appropriate. The error to articulate the analysis of "supportability" and to fully articulate the analysis of the "consistency" factor is not harmless. There is evidence in the record that could support both treating physicians' opinions, and/or that could support or undermine the prior medical findings of the agency consultants.[7] (*See*, generally, Doc. 10 at 19-33; Tr. 477-480, 870-974).

Having determined that remand is required based upon the articulation error in this case, the Court need only briefly address Plaintiff's additional arguments concerning the substance of his treating physicians' opinions. Plaintiff argues that as "a matter of fundamental fairness," the ALJ should have found Drs. Wunder and Danko to be more

---

[7] For example, the agency consultants' opinions were rendered prior to the implantation of Plaintiff's pain pump.

12

persuasive than the agency reviewing physicians, because of their more significant relationship and specialty,[8] as well as the fact that they prescribed narcotics and patches, injections, a spinal cord stimulator, and ultimately an intrathecal pain pump. Plaintiff is correct that despite the elimination of the treating physician rule, an ALJ still must "consider" factors such as the frequency of examinations and other components of the treatment relationship, as well as the area of specialization. 20 C.F.R. § 1520c(c)(3) and (4). In this case, those factors (arguably) could support finding the opinions of his treating physicians to be persuasive. On the other hand, in the absence of concluding that two or more medical opinions or prior administrative medical findings are equally persuasive on the same issue, there is no legal requirement for an ALJ to articulate or explain how she considered any of the factors other than consistency and supportability. *See* 20 C.F.R. § 404.1520c(b)(3); *see also generally, Biestek v. Com'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (*aff'd on other grounds*, 139 S. Ct. 1148) (finding no requirement for an ALJ to perform an exhaustive, step-by-step analysis of each factor). Therefore, the ALJ's failure to articulate her consideration of the additional factors in this case provides no independent grounds for reversal.

**2. Plaintiff's Subjective Complaints and Corresponding RFC Determination**

In his second claim, Plaintiff argues that the ALJ's RFC determination was based upon an unreasonably selective consideration of the record and/or a mischaracterization of the record because the ALJ failed to fully accept Plaintiff's subjective pain complaints. As a result, Plaintiff asserts that the RFC is not substantially supported.

---

[8]Dr. Wunder was Plaintiff's treating physical medicine and rehabilitation specialist, and Dr. Danko was the pain management specialist to whom Plaintiff was referred. By contrast, the two agency reviewing physicians were trained as a hematologist (Dr. Prosperi) and as an internist (Dr. Amiri).

The ALJ did not contest the existence of Plaintiff's back pain, but discounted the degree or magnitude of Plaintiff's reported pain level. Plaintiff's criticism of the ALJ's analysis of his subjective complaints would not be sufficient to support reversal standing alone. While subjective pain complaints can support disability, cases based on allegations of disabling pain that are not wholly supported by objective evidence are often among the most difficult to resolve. That is one reason why an ALJ's assessment of subjective symptoms including pain complaints is generally given great deference. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[9] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

In this case, Plaintiff argues that the ALJ improperly focused on his lumbar spine rather than his thoracic spine, based upon the ALJ's citation to negative straight leg raise test results and/or normal gait. Plaintiff points out that his pain management physician, Dr. Danko, performed no straight leg tests, and argues that his thoracic spine problems "consistently cause him most of his pain and most of his limitation." (Doc. 13 at 15, emphasis original). However, there is ample evidence that Plaintiff complained of pain in both regions. And even thoracic radiculopathy would not have required the ALJ to find

---

[9] An ALJ's assessment of subjective symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

14

disability. *See, e.g.*, *Joseph v. Com'r of Soc. Sec.*, 741 Fed. Appx. 306 (6th Cir. 2018) (affirming despite evidence of arthritis with radiculopathy); *Sadler v. Com'r of Soc. Sec.*, 2021 WL 3578099, at *2 (S.D. Ohio, Aug. 13, 2021) (affirming non-disability decision despite evidence of multiple bases for pain including but not limited to permanent nerve damage, spasm, lumbar disc disease with radiculopathy, lumbar spine disease).

The ALJ discounted Plaintiff's complaints of disabling back pain as "not fully supported" by the record, (Tr. 23), based in part upon the ALJ's evaluation of the objective evidence. (*See* Tr. 20-21).[10] The ALJ also reviewed Plaintiff's treatment history, including a failed epidural injection in September 2016 and a subsequent spinal cord stimulator placed in May 2017 that – at least for a few months – appeared to help greatly with Plaintiff's pain. (Tr. 21). In December 2017, Plaintiff reported an uptick in back pain that he attributed to a motor vehicle accident back in September, but Dr. Wunder later noted that he could not find anything objectively to account for that level of pain. (Tr. 21; Tr. 798). The ALJ further considered that a physician from whom Plaintiff sought a second opinion regarding his back pain recommended only conservative treatment including a home exercise program. (Tr. 820, 826). In November 2018, Plaintiff's pain management clinic indicated that he was not taking medication as prescribed and warned him that he would not be prescribed if that continued. (Tr. 846).

Plaintiff reported increased pain after removal of his spinal cord stimulator. (Tr. 21, 851). The ALJ cited to a repeated notation dating September through early December 2018 by a nurse-practitioner in Dr. Danko's office that "[c]urrent treatment provides pain

---

[10]Although the ALJ also discussed evidence relating to Plaintiff's pain complaints from osteoarthritis, carpal tunnel syndrome, and headaches, (*see* Tr. 21-22), Plaintiff does not challenge the assessment of those pain complaints.

15

relief and enables functional activities of daily living." (Tr. 21; Tr. 849, 853, 858, 863). However, the same records reflect that the "current" treatment plan changed during that time period, including the addition of Percocet after the removal of the spinal cord stimulator, and Plaintiff's report that he began using marijuana to help with pain control. (*See e.g.*, Tr. 857-58, 862-63). In December 2018, Plaintiff began a trial with a new intrathecal pain pump. (Tr. 21; Tr. 966, 968, 971-72). After a successful trial, the pain pump was placed in March 2019. (Tr. 22; *see also* Tr. 953-954).

With respect to daily activities, the ALJ cited to Plaintiff's testimony that he is able to do dishes, vacuum, and shop for groceries. (Tr. 65-66). Additionally, two records dated in March and May 2017 included a report that Plaintiff had been swimming at the YMCA. (Tr. 22, 394, 460). Plaintiff does not quibble with the ALJ's references to his activities. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Warner v. Com'r of Soc. Sec.*, 375 F.2d at 392. On the other hand, Plaintiff strongly disputes the ALJ's focus on periods of improvement on grounds that any "improvement" necessarily depends upon "the base level from which it is measured." (Doc. 13 at 4). In Plaintiff's view, his treatment records reflect only "transitory and short lived" improvement, as opposed to the type of sustained improvement under which he could have engaged in full-time work. (*Id.*)

Last but not least, Plaintiff insists that the ALJ erred when she referenced work activity following his disability onset date. On several occasions in 2016, records reflect Plaintiff's report that he was a woodworker and had a demanding physical job. (Tr. 22). The ALJ noted a record dating to November 2016, wherein Plaintiff reported putting in a custom kitchen and a January 2017 record in which he reported to his physician that he had $50,000.00 in "backlogged" work. (*Id.*) Dr. Wunder's May 24, 2017 note similarly indicates that Plaintiff was still working and on June 21, 2018, Dr. Shaftel noted that he

16

did not want to wear a wrist brace because it would interfere with doing "heavy labor with his hand." (*Id.*)

Plaintiff contends that the ALJ unreasonably interpreted the cited records "because [Plaintiff] testified unequivocally [at the hearing] that he always identified himself…as a woodworker." (Doc. 10 at 19). In other words, Plaintiff asserts that he identified so completely with his occupation as a master cabinet maker that he would routinely state to his doctors that he "is" a woodworker long after he ceased to be able to perform that work. Plaintiff urges this Court to reverse because the records themselves were created in error based upon Plaintiff's physicians' "mistake[]" or "erroneous impression that he was at the time still actually working well after his alleged onset date." (Doc. 10 at 20). Notably, the ALJ rejected Plaintiff's explanation that the references in the records referred to his self-identity and not actual work. (*See* Tr. 22-23, "While both the claimant and his attorney tried to dispute this work activity…, the record shows several of the claimant's doctors documenting more work activity than the claimant admits to."; *see also* Tr. 407, 416, 435, 460, 471). Plaintiff argues strenuously that his explanation "is an entirely reasonable one because things are often put down in office notes that can either be misconstrued or in which in some instances are either misleading or entirely inaccurate." (Doc. 10 at 20). Plaintiff posits that Dr. Wunder's notes in particular "simply repeated and/or carried forward the same [erroneous] notations" that Plaintiff remained actively engaged in making cabinets. (*Id.* at 21).

The issue before this Court is not whether Plaintiff's alternative explanation was more "reasonable" or convincing than the ALJ's interpretation. Rather, this Court is limited to determining whether the ALJ's interpretation is also reasonable and therefore substantially supported. *See generally*, *Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019)

17

(holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high"). After all, a court may not reverse even if there is substantial evidence to support an alternative conclusion, so long as the ALJ's analysis falls within a "zone of choice." That standard is met here, because the references to work activity occurred in multiple records and from multiple sources. (*See* Tr. 407, 416, 435, 460, 471, 833).

In short, the Court would find no reversible error in the ALJ's analysis of Plaintiff's subjective complaints if that claim stood alone. However, additional review of the medical opinion evidence is already required in connection with the RFC determination. Because there is a "zone of choice" involved in the assessment of subjective complaints, and because additional review may alter the ALJ's otherwise reasonable assessment, the ALJ is directed to re-assess Plaintiff's subjective complaints on remand.

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **REVERSED and REMANDED** under Sentence Four for further review consistent with this opinion.

                                            /s Stephanie K. Bowman
                                            Stephanie K. Bowman
                                            United States Magistrate Judge